# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEPHEN TURNER, ROCHELLE TURNER and THE CINCINNATI INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| MOEN STEEL ERECTION, INC., a Nebraska Corporation, | ) ) ) | 8:06CV227 |
| Defendant and Third-Party Plaintiff, | ) ) ) | ORDER ON DISCOVERY MOTIONS |
| vs. | ) ) ) | |
| ENTERPRISE PRECAST CONCRETE, INC., | ) ) ) | |
| Third-Party Defendant. | ) | |

This matter is before the court on the following discovery motions:

- [43]  Plaintiffs' Motion to Compel Discovery
- [61]  Defendant's responsive Motion for Protective Order
- [83]  Defendant's Motion to Compel Discovery
- [90]  Motion of Plaintiff Cincinnati Insurance for Protective Order
- [93]  Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927

The parties have substantially complied with the requirements of NECivR 7.1(I), and the motions have been fully briefed.  For the reasons discussed below, the court finds that Plaintiffs' Motion to Compel [43] should be granted; Defendant's Motion for Protective Order [61] should be denied; Defendant's Motion to Compel [83] should be denied; Cincinnati Insurance Co.'s Motion for Protective Order [90] should be granted; and Plaintiffs' Motion for Sanctions [93] should be denied without prejudice.

## BACKGROUND

### A. The Parties' Claims and Defenses

Plaintiff, Steven Turner, was a concrete finisher employed by Lund Ross Constructors, Inc. ("Lund-Ross"), general contractor for the Omaha Park Eight Garage ("Park Eight") project. The Cincinnati Insurance Company ("Cincinnati" or "the company") is Lund-Ross' workers compensation insurance carrier. On February 27, 2004, Mr. Turner was injured when a 4,600-pound precast concrete wall panel fell and crushed him on the site of the Park Eight project. Defendant, Moen Steel, was the subcontractor that erected the concrete panel. The third-party defendant, Enterprise Precast Concrete, Inc. ("Enterprise"), manufactured the precast concrete wall panel.

The complaint alleges that the defendant ("Moen"), through its employees, negligently caused plaintiffs' (together, "Turners") injuries and damages by failing to comply with OSHA regulations and by materially altering the concrete panel's connection with the footing of the building from the design and contract specifications, causing the panel to collapse and crush Steven Turner. Rochelle Turner, the wife of Steven Turner, requests damages for loss of consortium.

In its answer, Moen denies plaintiffs' allegations of negligence. Moen affirmatively alleges that plaintiffs' injuries and damages were proximately caused or were contributed to by Stephen Turner's, own acts or by other illness or injury not associated with the collapse of the concrete panel; Steven Turner was contributorily negligent; Steven Turner assumed the risk of injury; the plaintiffs have not been damaged to the extent alleged; plaintiffs' damages were caused in whole or in part by the negligence or fault of

third-parties; plaintiffs' claims and/or damages are barred due to intervening and/or superseding causes; and the negligence of Lund-Ross was the sole proximate cause of plaintiffs' injuries and/or damages.

Moen's Third-Party Complaint alleges that Enterprise is strictly liable to the plaintiffs for defectively designing, manufacturing and marketing the precast concrete panel and for defectively designing the connection for the panel.  Moen further alleges that Enterprise was negligent in its design and manufacture of the panel and its connection, and its negligence was the proximate cause of Steven Turner's injuries.

Enterprise denies Moen's allegations that it was negligent or is strictly liable. Enterprise affirmatively alleges that the concrete panel was intentionally modified by employees of Moen from the design and contract specifications for the panel's connection (as alleged by the plaintiffs); plaintiffs' injuries and damages were the result of Moen's modifications to the precast concrete panel after the panel left the hands of Enterprise, and plaintiffs' subsequent injuries and damages are unrelated to any product Enterprise distributes; the concrete panel was put to abnormal and/or unintended use, and was modified from the product produced by Enterprise; plaintiffs' injuries and damages resulted from independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct or product placed in the stream of commerce by Enterprise; and plaintiffs' injuries and damages were proximately caused by some person or third-party other than Enterprise.

### B. Discovery Issues Presented

All parties served Rule 26(a)(1) initial disclosures on June 15, 2006.  Other discovery requests and responses were made as follows:

-3-

| Date Served | Requesting Party | Type of Request(s) | Producing Party | Response(s) Served | Response(s) Supplemented |
|---|---|---|---|---|---|
| 6-21-2006 | Plaintiffs | Interrogatories & Doc. Requests | Moen | 7-21-06 with privilege log[1] | 8-22-06[2] |
| 6-28-2006 | Plaintiffs | Interrogatories & Doc. Requests | Enterprise | Objections 7-31-06 | 9-14-06 |
| 7-14-2006 | Moen | Interrogatories & Doc. Requests | Cincinnati Ins. | 8-18-06 with privilege log | 8-28-06 & 9-8-06 |
| 7-14-2006 | Moen | Interrogatories & Doc. Requests | Turners | 8-18-06 with privilege log | 9-8-06 |
| 7-14-2006 | Moen | Interrogatories & Doc. Requests | Enterprise | Objections 8-14-06 | 9-14-06 |

Discovery was also conducted by subpoena.  Unfortunately, the parties' attempts to finalize a deposition schedule for Moen's employees have been stalled by discovery disputes.

In summary, plaintiffs contend that Moen has made numerous improper assertions of privilege and work-product protection, and plaintiffs cannot prepare for or schedule the employee depositions until Moen provides the appropriate discovery.  Plaintiffs further

---

[1]The privilege log served by Moen on July 21, 2006 did not comply with the requirements set out in paragraph 5 of the Initial Progression Order [19], which provides:

**Withholding Documents from Disclosure or Discovery.**  If any document is withheld from production or disclosure on the grounds of privilege or work product, the producing party shall disclose the following information about each such document withheld: a description of the document withheld with as much specificity as is practicable without disclosing its contents, including (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; and (g) the specific reason or reasons why it has been withheld from production or disclosure.

Moen did not serve a complying privilege log until August 31, 2006, in response to plaintiff's Motion to Compel [61].

[2]The validity of Moen's supplemental responses is doubtful, because they were not signed by the person making them, as required by Fed. R. Civ. P. 33(b)(2).  I also note that Moen's supplemental responses were not served until after plaintiffs filed their Motion to Compel.  A number of the supplemental responses state only that Moen had not yet identified its trial witnesses and/or compiled the responsive information, and stood on all its objections, but would–in the spirit of cooperation–supplement its responses after it "has had a full opportunity to avail itself of the discovery process in this case."  *See* Filing 62-4.

complain that the supplemental responses to interrogatories provided by Moen on August 22, 2006 are not properly verified as required by Fed. R. Civ. P. 33(b)(2).

Moen objects to plaintiffs' use of "contention interrogatories" and asks that the court enter a protective order that this type of discovery not be had or that Moen's obligation to respond should be delayed until "a future date certain" after it has had an opportunity "to further avail itself of the discovery processes."  Moen also objects to the production of certain investigative information on grounds of attorney-client privilege and/or work-product protection.

Moen also complains that the plaintiffs have not provided a complete list of their claimed damages or a detailed explanation of any permanent injuries resulting from the accident, and that they have not identified all persons who will provide expert opinions. Moen further complains, essentially, that the plaintiffs have refused to answer its own contention interrogatories.

Finally, plaintiffs and Moen accuse each other of violating the Initial Progression Order in various respects and request awards of sanctions.

## LEGAL ANALYSIS

### A.  Scope of Discovery

The scope of discovery in federal civil actions is set out in Rule 26 of the Federal Rules of Civil Procedure.  Under Rule 26(b)(1), the parties to a lawsuit obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  "Relevancy is broadly

construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

All discovery is subject to the limitations imposed by Rule 26(b)(2), and the court must limit discovery if it determines that:

> (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). Rule 26(c) further contemplates the issuance of protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in certain respects.

When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses v. Halstead*, 236 F.R.D. at 671. If the relevancy of the discovery request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Id.*

-6-

## B. Conducting Discovery

### 1. Interrogatories

Fed. R. Civ. P. 33(b)(1) requires that interrogatories "be answered separately and fully in writing under oath."  If a party objects to an interrogatory, the party must state the reasons for objection.  *Id.*  The answers must be signed by the person making them.  Rule 33(b)(2).  Objections to interrogatories are to be signed by the attorney making them, if the party is represented by an attorney.  *Id.*

> Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories....  If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and "set forth the efforts he used to obtain the information."  ....  It is axiomatic that the purpose of discovery is to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," ..., as well as to narrow and clarify the issues in dispute.

*Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996) (citations omitted).

### 2. Use of Contention Interrogatories

The use of "contention interrogatories" is allowed pursuant to Fed. R. Civ. P. 33(c), which provides:

> An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.

The term "contention interrogatories" may encompass several types of questions. For example,

> They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases

> its contentions, or to explain how the law applies to the facts. *They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations.*

*In re Grand Casinos, Inc., Sec. Litig.*, 181 F.R.D. 615, 618 (D. Minn. 1998) (quoting *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996)) (emphasis added by Minnesota court). An interrogatory seeking information that is largely duplicative of the disclosure obligations of Fed. R. Civ. P. 26(a)(1)(A) is not a "contention" interrogatory. *See In re Grand Casinos, Inc., Sec. Litig.*, 181 F.R.D. at 618.

True contention interrogatories may be helpful "in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense." *Moses v. Halstead*, 236 F.R.D. at 674. In general, a contention interrogatory will be considered overly broad and unduly burdensome "if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case." *Id.* The parties' interrogatories may properly ask for the principal or material facts which support an allegation or defense, and may seek the identities of knowledgeable persons and supporting documents for the principal or material facts supporting an allegation or defense. *Id.*

### 3. Document Requests

Fed. R. Civ. P. 34(b) provides: "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." The response must allow the producing party to readily determine which documents are responsive to which request. The producing party need not actually copy the documents for the requesting party, but

need only make the documents available for inspection and copying at an appropriate time and place. Procedures for document production are open to negotiation, and this court strongly encourages counsel to devise cost effective procedures for producing documents that will serve each party's interests.

As to objections involving oppressiveness or undue burden, Magistrate Judge Thalken recently observed:

> "All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. *Id.* "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations omitted).

> The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents. *See id.* It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant. *Burnett v. Western Res. Inc.*, CIV. A. No. 95-2145-EEO, 1996 WL 134830, *4 (D. Kan. Mar. 21, 1996). If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant. *Id.* However, a threshold showing of relevance is necessary before production of information, which does not reasonably bear on the issues in the case, is required. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993).

*Miller v. Kellogg USA, Inc.*, Case No. 8:04CV500, Filing No. 77 (D. Neb., May 3, 2006).

### C. Attorney-Client Privilege and Work-Product Protection

#### 1. Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases. The attorney-client privilege is defined in Nebraska as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the client and a representative of the client, or (e) between lawyers representing the client.

Neb. Rev. Stat. § 27-503(2). Under § 27-503(1)(d), "A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."  A "client" is "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him."  § 27-503(1)(a).

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege protects only the disclosure of

attorney-client communications and does not protect disclosure of the underlying facts by those who communicated with the attorney. *Id.* at 395. *See also Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (1978) (en banc).

Because the privilege obstructs the truth-finding process, it is construed narrowly. *Diversified Indus.*, 572 F.2d at 602. The burden is upon the party claiming the privilege to demonstrate that it applies in the particular circumstances of the case. *Kansas-Nebraska Natural Gas v. Marathon Oil Co.*, 109 F.R.D. 12, 20 (D. Neb. 1985). The party claiming the privilege must show not only that the attorney-client privilege was applicable absent any waiver, but also that a waiver did not occur. *Id.* "Under Nebraska law, an implied waiver of the attorney-client privilege occurs when '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'" *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) (quoting *League v. Vance*, 221 Neb. 34, 374 N.W.2d 849, 856 (1985)).

### 2. *Work-Product Doctrine*

Under the Work Product Doctrine, as set out in Fed. R. Civ. P. 26(b)(3),

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions,

-11-

or legal theories of an attorney or other representative of a party concerning
the litigation.

The work product doctrine is distinct from and broader than the attorney-client
privilege, *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977), and was designed to prevent
"'unwarranted inquiries into the files and mental impressions of an attorney[.]'" *Simon v.
G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.), *cert. denied*, 484 U.S. 917 (1987) (quoting
*Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). The doctrine recognizes that lawyers must
be allowed to work with a certain degree of privacy, free from unnecessary intrusion by
opposing parties and their counsel. *Id.* Materials are not protected under the work product
doctrine unless they were prepared in anticipation of litigation, and materials prepared in
the ordinary course of business are not protected. *Id.* Determining whether documents
were prepared in anticipation of litigation is a fact question governed by federal law. *St.
Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 627 (N.D. Iowa
2000). The test within the Eighth Circuit is

> whether, in light of the nature of the document and the factual situation in the
> particular case, the document can fairly be said to have been prepared or
> obtained because of the prospect of litigation. But the converse of this is that
> even though litigation is already in prospect, there is no work product
> immunity for documents prepared in the regular course of business rather
> than for purposes of litigation.

*Simon v. G.D. Searle & Co.*, 816 F.2d at 401 (quoting 8 C. Wright & A. Miller, Federal
Practice and Procedure § 2024, at 198-99 (1970)). *See also Diversified Industries, Inc. v.
Meredith*, 572 F.2d at 604 ("[T]he work product rule does not come into play merely
because there is a remote prospect of litigation.").

-12-

### D.  Rulings on Individual Motions

Considering the parties' submissions in light of the principles discussed above, the

court will now rule on the parties' various discovery motions.

- **Filing 43,** *Turners' motion to compel discovery from Moen*
- **Filing 61,** *Moen's motion for protective order*

Moen's objections based on vagueness, overbreadth, oppressiveness, undue burden,

work-product protection and/or attorney-client privilege are overruled as to the following

Interrogatories:

2   Identify each non-expert (lay) witness you expect to testify at trial of this matter and
    state the substance of any subjects to which (s)he is expected to testify.

3   Identify each person whom you expect to call as an expert witness at trial and, with
    regard to each such person, state: (a) the qualifications of each expert; (b) the
    subject matter on which the expert is expected to testify; (c) the substance of the
    facts and opinions to which the expert is expected to testify; and (d) a summary of
    the grounds for each opinion.

5   Set forth all facts and identify all documents or tangible things supporting your claim
    that "Plaintiff was negligent" and that "Plaintiff's negligence was the sole proximate
    cause or a proximate cause or a proximate cause of his alleged injuries and
    damages."

6   Set forth all facts and identify all documents or tangible things supporting your claim
    that "Plaintiff's alleged damages, or a portion of those alleged, were caused by that
    Plaintiff's other pre-existing or subsequent injuries or illnesses not proximately
    caused by the accident alleged in Plaintiff's Complaint."

7   Set forth all facts and identify all documents or tangible things supporting your claim
    that "Plaintiff knew of and understood the specific danger posed by undertaking the
    activity alleged in the Complaint; the Plaintiff voluntarily exposed himself to that
    danger; and the Plaintiff's alleged injury occurred as a result of his exposure to that
    danger."

8   Set forth all facts and identify all documents or tangible things supporting your claim
    that "the negligence of a third party(s) or other force(s) intervened between the
    alleged negligent acts of Defendant and the Plaintiff's alleged injury resulting directly

-13-

in Plaintiff's alleged injury; and the negligence of said third party(s) or other force(s) could not be fore seen by Defendant."

9   Set forth all facts and identify all documents or tangible things supportinig your claim that "the negligence of third parties were [sic] the proximate cause or concurring cause of Plaintiffs' alleged injuries and damages."

10   Set forth all facts and identify all documents or tangible things supporting your claim that "the negligence of Plaintiff's employer, Lund-Ross Constructors, Inc., was the sole proximate cause of Plaintiff's alleged injuries and damages."

11   Set forth all facts and identify all documents or tangible things supporting your claim that "Plaintiff's Complaint fails to state a claim upon which relief may be granted within the meaning of FRCP 12(b)(6)."

13   With respect to individuals named in answer to Interrogatory No. 12 [individuals with knowledge related to the Park Eight project or the subject matter of this lawsuit], state the knowledge possessed by each individual.

15   Please state the dates and subject matter of any conversations defendant Moen, its principals, employees, representatives or agents had with any of the individuals identified in the answer to Interrogatory No. 14 [persons affiliated with Lund-Ross or Enterprise to whom Moen's representatives spoke regarding the Park Eight project or the subject matter of this lawsuit].

21   Do you contend that any of the costs of services furnished by any health care provider claimed as damages by plaintiffs in the Complaint or their Initial Disclosures were not necessary or are unreasonable?  If so: (a) identify each cost; (b) state all facts upon which you base your contention; (c) Identify all persons who have knowledge of the facts; and (d) identify all documents and other tangible things that support your contention.

22   Do you contend that any part of the loss of earnings or income claimed by plaintiff Stephen Turner is unreasonable or was not caused by the incident?  If so: (a) identify each part of the loss; (b) state all facts upon which you base y our contention; (c) identify all persons who have knowledge of the facts; and (d) identify all documents and other tangible things that support your contention.

These interrogatories all seek information directly relevant to Moen's stated defenses—information that is largely duplicative of Moen's disclosure obligations under Fed.

R. Civ. P. 26(a)(1).[3]   To the extent Moen contends any responsive documents are governed by the work-product doctrine or the attorney-client privilege, Moen shall specifically identify the allegedly protected documents associated with each discovery request, if it has not already done so.

Plaintiffs' Interrogatories Nos. 16, 19 and 20 request information about investigative reports solicited by Moen, as follows:

16 State the name and address of each consultant, expert or other person or corporation acting on your behalf who has inspected, tested, examined, photographed, or measured or in any other manner investigated any subject or objects related to the subject matter of the current lawsuit or who has otherwise been retained, consulted or contracted by you or your representatives concerning any issue regarding this litigation, regardless of whether it is presently your intention to call such expert or other person to testify at trial in this action.  For each such expert or other person, state:  (a) the nature of the services performed; and (b) the date on which such services were performed.

19 Was a report made by any person concerning the subject matter of the current lawsuit, including the incident of February 27, 2004?  If so:  (a) identify the person

---

[3]Under Rule 26(a)(1), a party must, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;
(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;
(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and
(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1).  "A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."  *Id.*

who made the report; (b) state the date and type of report made; and (c) identify the person for whom the report was made.

20 Have you or anyone acting on your behalf conducted surveillance of any individual involved in the incident of February 27, 2004 or any party to this action?  If so, for each surveillance: (a) identify the individual or party surveilled; (b) state the time, date and place of the surveillance; and (c) identify the individual who conducted the surveillance.[4]

Although Moen did not object to Interrogatory No. 19, and answered the interrogatory to some extent, it did not identify the types of reports made.  It will be required to do so.

Moen asserted blanket objections to Interrogatories Nos. 16 and 20, asserting that they request attorney work-product and the disclosure of Moen's trial preparation materials. The court finds that the plaintiffs have demonstrated a need for the materials, considering the nature of the incident, Steven Turner's blindness, and that these materials were complied fairly shortly after the accident.  Accordingly, all responsive factual information must be produced, but may be produced in such a way that it does not explicitly disclose "the mental impressions, conclusions, opinions, or legal theories" of defense counsel.   If any responsive documents are said to constitute "work-product" because of tabulations, notations, or other markings made by counsel or counsel's consultants, then Moen shall produce redacted documents.

Turning to plaintiffs' Requests for Production of Documents, I make the following findings:

4 [requesting] Exact copies (i.e., bit-by-bit mirror image copies) of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital

---

[4]Plaintiffs advise they are aware that Steven Turner was the subject of surveillance because Turner actually spoke to the individual, who would not identify himself.  *See* Filing 46-7 at p.5.

assistant computers, servers, and other electronic media related to the Project or the subject matter of the current lawsuit from July 25, 2002 through the present.

Moen's objections to Request No. 4 based on relevance, overbreadth, undue burden, and privilege are overruled.[5]  Although Moen has asserted privilege, it did not appear to identify any responsive communications in its initial disclosures or in its privilege logs.  Unless Moen has, in fact, identified these materials on its revised privilege log, its objections based on privilege and/or work-product protection are overruled, and Moen is hereby ordered to produce all responsive materials and information.  If there no responsive materials exist, then Moen shall serve a signed and verified response to that effect.

6   For each interrogatory set forth in Plaintiffs' First Set of Interrogatories to defendant Moen, produce all documents which defendant referred to, relied upon, consulted or used in any way in answering such interrogatory.

Moen's objections to Request No. 6 based on vagueness, overbreadth, undue burden, and oppression are overruled.  Moen need not produce the actual communications between it and its attorneys; however, all other responsive information must be produced in such a way that it does not explicitly disclose "the mental impressions, conclusions, opinions, or legal theories" of defense counsel.  If any responsive documents are said to constitute "work-product" because of tabulations, notations, or other markings made by counsel or counsel's consultants, then Moen shall produce redacted documents.

7   [requesting] all documents relating to the Project or the subject matter of the current lawsuit, including without limitation: * * *
     b.  all correspondence (including internal); * * *
     o.  all other reports, notes and memos; [and]

---

[5]The court tends to agree with the plaintiff that it is "odd" that Moen's employees are said to be communicating with counsel by e-mail, but did not communicate with each other by e-mail at any time during the Park Eight construction project.  *See* Filing 71 at pp. 8-9.

-17-

   r. all documents relating to any conversations, communications, conferences or meetings relating to the Project or the events described in the Complaint.

Moen is hereby ordered to produce all materials responsive to Requests Nos. 7(b), 7(o) and 7(r), and to specifically identify the items listed on its amended privilege log that are responsive to each of these requests. Moen's supplemental discovery responses do not suffice because they have never been verified as required by Fed. R. Civ. P. 33.

   12 All documents reflecting meetings, conversations, and telephone conferences between defendant Moen and any other individual or entity, including, without limitation any vendor, subcontractor, general contractor, architect or engineer, relating to precast concrete panels erected by defendant Moen related to the Project or the subject matter of the current lawsuit.

   13 Any and all test reports, engineering reports, consultant reports, laboratory reports, or reports investigating or relating to the precast concrete panels erect ed by defendant Moen related to the Project and all corresponding memoranda, notes or other documents related thereto.

   14 All diaries, job diaries, job record files, calendars, notes, field notes, general records, correspondence, memoranda, including internal or inter-office memoranda, electronic mail, certificates of substantial completion and other documents generated or kept by the officers, agents, representatives, or employees of defendant Moen related to any aspect of its work on the Project.

   15 To the extent not otherwise requested, all internal or interoffice memoranda, electronic mail, correspondence, files and notes relating to defendant Moen's work on the Project.

   22 All investigation reports, surveillance reports, incident or accident reports, or other evaluations or analysis prepared by defendant Moen or any of its subcontractors, agents, employees, consultants, insurers, adjusters or other independent contractors hired by defendant Moen related to the Project or the subject matter of the current lawsuit.

Apparently, Moen has retained consulting experts, but has not yet retained any testifying expert. The dispute over Requests Nos. 12, 13, 14, 15 and 22 appears to center around Moen's refusal to produce any information whatsoever that was obtained from a consultant.

I find that Moen should be required to produce all factual information contained in documents responsive to Requests Nos. 12, 13, 14, 15 and 22.  Responsive documents may be redacted as necessary to preserve any attorney work-product.  Moen is cautioned that any documents that were prepared in the normal course of business pursuant to regulation or contract, or for any purpose other than "anticipation of litigation," are fully discoverable.

> 19 [requesting] all documents which reflect in any fashion observations or the determination of improper, deficient, or defective materials supplied by Enterprise Precast Concrete, Inc., related to the Project.
>
> 21 [requesting] any and all documents upon which defendant Moen intends to rely to establish proof of its third party claim against Enterprise Precast Concrete, Inc., or refutation of claims or damages alleged by plaintiffs in their Complaint or supporting defendant Moen's affirmative defenses as alleged in its Answer.

Any documents responsive to Requests No. 19 and 21 are directly relevant to Moen's claims raised in the third-party complaint and are discoverable under Fed. R. Civ. P. 26(a)(1)(A).  Moen's objections are overruled.  If any privileged or protected documents exist, Moen shall identify them specifically.

Finally, at pages 13-20 of their Brief [71] in opposition to Moen's motion for protective order, the plaintiffs identified numerous documents that they contend have been improperly withheld on grounds of privilege or work-product protection.  The court has neither the time nor the inclination to review these documents *in camera*.  Counsel are once again reminded that the attorney-client privilege is construed narrowly and that work-product protection does not attach to any materials that were prepared in the ordinary course of business.  If counsel cannot reach a reasonable agreement as to the production of these documents, and further intervention by the court is required, the matter will be

immediately referred to a special master, and the costs of retaining the special master will be assessed against the parties in proportion to their success (or lack thereof) on the merits of their claims of privilege or work-product protection.

- **Filing 83, *Moen's motion to compel discovery from all plaintiffs***
- **Filing 90,*Cincinnati Ins. Co.'s motion for protective order***

In Filing 83, Moen contends that the plaintiffs have not provided full and complete answers to its interrogatories and requests for production.

At issue are the following answers to Moen's Interrogatories Nos. 6 and 9 and, possibly, 12 and 15, served by Steven and Rochelle Turner:

6   Give detailed description of nature, extent and duration of any and all injuries or conditions incurred as a result of the accident of February 27, 2004.

**Answer:**  In addition to those descriptions of the nature, extent and duration of injuries and conditions found in Stephen Turner's medical records produced contemporaneously herewith in response to Defendant's Request for Production of Documents, as a result of the February 27, 2004 accident, Plaintiff suffered the following injuries, some or all of which are permanent in nature as more fully detailed in the records of treatment and which will be the subject matter of expert testimony at the time of trial:  Blunt trauma crush injury with multiple closed pelvic fractures with disruption of pelvic circle; retroperitoneal hematoma; extraperitoneal bladder rupture, intraabdominal compartment syndrome; anoxic brain injury with optic atrophy, secondary bilateral ischemic optic neuropathy; blindness secondary to ischemic cortical injury; abdominal trauma with serial bilateral abdominal wall tissue expansion with complications and abdomen reconstruction; bilateral lumbosacral plexus injury with history of pelvic crush injury; neurogenic lower extremity weakness and sensory numbness including residual foot drop; right lower extremity limb shortening with limb length discrepancy; dysesthetic/neuropathic pain syndrome; left ulnar nerve palsy; multifactorial gait abnormality and residual bilateral foot drop; right lower extremity limb length discrepancy; mechanical low back pain; neurogenic bladder with vesicocutaneous fistula; sexual dysfunction; organic brain dysfunction secondary to stroke; neuropsychological injury and depression.

**Supplemental Information** served on September 7, 2006:  Upon current information and belief, Plaintiffs state that according to an office visit note of June 26, 2006, Dr. Thomas Franco considers Mr. Turner has now reached maximum

medical improvement and states that he does not "expect a fundamental change" in his medical status. It is believed that Dr. Franco will be establishing permanent restrictions and assessing permanent impairments in the near future; however, Plaintiffs have not received such a report to date. Attached hereto is a copy of Dr. Franco's most recent note of August 11, 2006 which more fully describes the plaintiff's progress to date, Bates Nos. S&A 0101 – S&A 0105. Additionally, see medical records of Stephen Turner previously produced for restrictions contained therein, including more specifically the recent records of Dr. Thomas Franco dated and [sic] May 25, 2006 and June 27, 2006 and August 11, 2006.

9   If injury or condition resulting from the accident of February 27, 2004 is claimed to be permanent, describe in detail the nature of the injury or condition claimed to be permanent and the name and address of the doctors confirming such permanency and injury. Annex true copies of all written reports rendered to you by such doctor.

**Answer:** Plaintiffs claim that those injuries suffered by Stephen Turner in the accident of February 27, 2004 as more fully described in answer to Interrogatory 6 herein have resulted in "permanent" impairments. Upon current information and belief, plaintiffs state that according to an office visit note of June 27, 2006 Dr. Thomas Franco considers Mr. Turner has now reached maximum medical improvement and states that he does not "expect a fundamental change" in his medical status. It is believed that Dr. Franco will be establishing permanent restrictions and assessing permanent impairments in the near future. See medical records of Stephen Turner for restrictions contained therein, including more specifically the recent records of Dr. Thomas Franco dated and [sic] May 25, 2006 and June 27, 2006 attached hereto. Plaintiffs' retained expert Lisa Pollard of Stricklett & Associates is currently in the process of preparing a Life Care Plan concerning plaintiff Stephen Turner and said plan will be made available to defendant upon completion.

**Supplemental Information** served on September 7, 2006: The answer was supplemented to include information regarding Dr. Franco's August 11, 2006 note.

12  Itemize in complete detail any and all monies expended and/or expenses incurred for hospitals, doctors, nurses, x-rays, medicines, care, and appliances, and state the name and address of each payee or creditor and the amount incurred from each resulting from the accident of February 27, 2004. Annex true copies of all such itemized bills or receipts.

**Answer:** Plaintiffs are in the process of gathering this information and will supplement this response.

15  If other loss of income, profit, or earnings is claimed: (a) state total amount of loss; (b) give complete detailed computation of said loss; (c) state detailed nature of

-21-

source of loss of such income, profit or earnings; (d) state the names and addresses of person or persons having records substantiating such loss.

**Answer:** Plaintiffs are claiming past lost wages which were at the time of filing the Complaint herein approximately $73,000.00 and these losses continue to accrue. Wage information should be available from plaintiff Stephen Turner's employer Lund-Ross. Plaintiffs are also claiming the reasonable value of the lost earning capacity of Stephen Turner or the value of future lost wages for the remainder of his work life estimated at the time of filing the Complaint at approximately $367,000.00. These estimates of lost past and future income are subject to change and this interrogatory will be supplemented once plaintiffs have final reports from their retained experts including a vocational rehabilitation evaluation by Karen Stricklett and an economic loss assessment by Dr. Curtis Cramer.

**Supplemental Information** served on September 7, 2006: Lost wages to date are approximately $100,055.18. That figure was calculated using Plaintiff's average weekly wage of $763.78 for 131 weeks of lost work.

Moen complains that these responses and supplemental are defective in that the Life Care Plan referenced in Turners' answers and supplemental answers has not yet been provided. Since plaintiff Cincinnati Insurance Company identified a letter acknowledging receipt of a Life Care Plan dated June 21, 2005 in its Amended Privilege Log, Moen concludes that a Life Care plan has been available to the plaintiffs for some time and the plaintiffs have intentionally withheld its production, impeding Moen's ability to defend this lawsuit.

Plaintiffs contend that Moen's arguments are frivolous as to these interrogatories. The court agrees and finds that plaintiffs' answers are sufficiently responsive.

Moen next complains that Turners did not satisfactorily respond to its Interrogatories Nos. 25, 26, 28 and 29:

25 Identify with particularity, the name of each and every Code, Statute, Regulation, rule or Standard along with its respective subparts (if applicable) that Plaintiffs allege was violated by the Defendant in this matter. For each Code, Statute, Regulation, Rule or Standard, please also state the specific section, language you will rely upon, and date, if applicable.

-22-

**Answer:**  Plaintiffs asserted objections based on attorney-client privilege and the work-product doctrine, and objected on grounds of overbreadth because the interrogatory sought "each and every" violation supporting the plaintiffs' claims.  The plaintiffs did state that they alleged Moen breached various common law duties and standards applicable under Nebraska law as more specifically alleged in the Complaint; that Moen breached general and specific duties assumed under contracts entered into by it related to the Omaha Park Eight Garage Project, including by way of example only its subcontract with Lund-Ross, Contract No. 02020-13 dated July 25, 2002 and by specific reference those plans, specifications, blue prints and shop drawings with attendant warnings, general and special contract conditions, the general Contract Documents and Special Provisions, S.P. 01-19D for the project including but not limited to the provisions of Sections 03410 and 03450 therein; that it violated OSHA regulations as more specifically alleged in paragraph 9 of plaintiffs' Complaint and a general duty clause under OSHA; that it violated customs and practices within the construction industry in those particulars alleged in paragraphs 7 and 8 of the Complaint and in failing to implement, communicate, monitor and enforce and effective safety and health program on the Omaha Park Eight Garage Project site; that it failed to adopt and adhere to the applicable standards found in the Accident Prevention Manual for Business & Industry, 10th Edition, National Safety Council, Part 2, Chapter 3, "Hazard Control Program"; that it failed to adopt and adhere to the applicable standards found in the U.S. Department of Labor, OSHA "Safety and Health Program Management Guidelines"; that it violated specific provisions of the City of Omaha Building Code and by reference provisions of the International Building Code [IBC] and American Concrete Institute Code [ACI] including without limitation ACI 318 and ACI 533R-93; and, that it violated specific duties, policies and standards established and assumed in the "Moen Employee Safety and Health Training Handbook".  See also the OSHA investigation file, Bates Nos. OSHA 00001 – OSHA 00163 and OSHA 164 – OSHA 252, and the April 26 report of Dr. David Hanks, Bates Nos. EDT 00049 – EDT 00198, produced contemporaneously herewith.

26   Identify and itemize with particularity any and all documents, materials or otherwise that Plaintiffs reference, utilize or rely upon to support their claim that Defendant was in violation of a Code, Statute Regulation, Rule or Standard identified in Interrogatory No. 26.

**Answer:**  See Objection and Answer to Interrogatory No. 25 herein.

These are true contention interrogatories, and are objectionable at this stage of the litigation because they go far beyond seeking factual information.  The court finds that

-23-

plaintiffs' answers are sufficiently responsive at this time, keeping in mind that the plaintiffs

have a duty to supplement their answers if it becomes necessary to do so.

28  Identify by name, address and telephone number, each person and every document you contend supports those facts Plaintiffs allege at paragraph seven (7)[6] of Plaintiffs' Complaint.

**Answer:**  Plaintiffs asserted objections based on attorney-client privilege and the work-product doctrine, and objected on grounds of overbreadth because the interrogatory sought "each person" and "every document" supporting the allegations.  Plaintiffs then referred Defendant generally to the investigations reflected in the OSHA files, Bates Nos. OSHA 0001 – OSHA 00163 and OSHA 164 – OSHA 00252.

**Supplemental Information served on September 8, 2006:**  Plaintiffs included references to the report of Dr. David Hanks, Bates Nos. EDT 0049 – EDT 00198, previously produced to the defendant.

29  For each person and document you identify in Interrogatory No. 28, please state the facts and contentions supported by the documents or persons you identify.

**Answer:**  See generally those persons and documents identified or made part of the OSHA files referenced in answer to Interrogatory No. 28.

**Supplemental Information served on September 8, 2006:**  Plaintiffs included references to the report of Dr. David Hanks, as for Interrogatory No. 28.

---

[6]Paragraph 7 of the Complaint alleges:

Subsequent investigations conducted by private individuals and public authorities revealed that the panel's connection with the building's  footing had been significantly and materially altered by employees of Moen from the design and contract specifications for the panel's construction, in that Moen employees failed to drill 20" deep holes into the footings and failed to place the panel's 20" rebar into the appropriate depth holes and further failed to fill the holes with a specified epoxy adhesive. Instead, the employees of Moen drilled two holes to a depth of 7" and 7 ¾" and then torch cut the panel's 20" rebar to lengths of 7" and 6 ½" and placed the panel and its rebar into the holes drilled without filling the holes with the specified epoxy adhesive.  This alteration made by the Moen employees left the panel without structural integrity and highly susceptible to failure.  Notwithstanding this alteration, the Moen employees failed and neglected to properly and adequately brace the precast concrete panel once set on the footings.

Apparently, the allegations of paragraph 7 of the complaint were based on the OSHA investigation of the accident.  Moen complains that the identification of 252 OSHA documents is not responsive, and is essentially asking the court to compel opposing counsel to provide the plaintiffs' own analysis of the OSHA study.  Such a request is not reasonable and, to that extent, plaintiffs' objections are sustained.  Moen's also complains that the response does not identify names, addresses, telephone numbers or correlation between the facts claimed and documents listed.  One would think this information would be self-evident from reading the report; however, the court has not seen the documents and they may not mention specific individuals.  If the plaintiffs have actual knowledge of the names, addresses, and/or telephone numbers of the persons who provided the information reflected in the OSHA reports, they should supplement their response in this regard, correlating the individual with the information provided, if it can be done without revealing attorney work-product.

I now consider the dispute over Moen's Request for Production No. 20, served on Stephen and Rochelle Turner, which calls for the production of "Any documents which discuss in any way claims made by Stephen Turner and benefits paid by The Cincinnati Insurance Company for said claims."  On August 17, 2006, plaintiffs served objections to the request to the extent it sought privileged or protected information; however, plaintiffs initially designated 1,451 pages of Bates-numbered documents obtained from the claim file of Cincinnati Insurance Company,  which were previously provided to Moen.  Plaintiffs initially identified five sets of documents as to which they asserted work-product protection. On September 8, 2006, plaintiffs served a supplemental response identifying additional

responsive documents, together with an amended privilege log.[7]

Turning to Moen's issues with Cincinnati Insurance Company, it appears that the company elected to respond to Moen's Interrogatory No. 4 and Request for Production No. 6, seeking copies of "all bills paid" and an itemization "in complete detail" of all monies paid by the company due to the February 27, 2004 accident, by producing business records. The business records were produced directly to Moen's attorney by paper document or disk and were also available for inspection and copying upon reasonable notice.  The court agrees with the plaintiffs that the burden of deriving or ascertaining this detailed itemization would be substantially the same for Moen as for the plaintiff.  Thus, the court finds that the responses to Moen's Interrogatory No. 4 and Request No. 6 are allowed under Fed. R. Civ. P. 33(d)[8] and 34(b).[9]

---

[7]On August 15, 2006, plaintiffs' counsel, by e-mail, asked Moen's attorney for an extension of time to respond to Request No. 20 because he realized he had not yet received the insurance company's entire claims file.  Moen's attorney did not respond to the e-mail but, in a letter dated August 29, 2006, expressed his disappointment that counsel "could not simply call me for more time to Answer our discovery rather than crafting responses that either avoid or provide non-responses to the questions."  In the "spirit of cooperation" so often invoked by Moen's attorney, Stephen G. Olson, II, in conjunction with these discovery disputes, the court will charitably assume that Mr. Olson was on vacation at the time the e-mail was sent.  The basis for this assumption is that plaintiffs' counsel had already agreed in early August not to take formal action regarding their discovery disputes with Moen until after August 21, 2006 in order to accommodate Mr. Olson's vacation schedule.

[8]Rule 33(d) provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or  ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

[9]Rule 34(b) allows parties who produce documents for inspection to "produce them as they are kept in the usual course of business."

Moen's Request No. 13, directed to Cincinnati Insurance Company, seeks

Any documents or correspondence exchanged between you or your agents and Lund-Ross Constructors, Inc. or Stephen Turner concerning construction or repair of Omaha Park 8; the February 27, 2004 accident; any investigation of said accident; and any [sic] the subsequent claims and treatment or recovery of Stephen Turner for his injuries.

The company initially objected based on work-product protection and supplemented its response by identifying certain documents in its claims file, which were available for inspection and copying upon request.

Moen's Request No. 16 to Cincinnati Insurance Company requests:

Exact copies (i.e., bit-by-bit mirror image copies) of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, and other electronic media of The Cincinnati Insurance Company, its employees, representatives or consultants, related to Stephen Turner's claims, Stephen Turner's progress with treatment and any investigation of the February 27, 2004 accident.

On August 17, 2006, the company served objections to the extent the request sought work-product or privileged communications, but identified 1,451 responsive Bates-numbered documents.  On August 28, 2006, the company identified additional responsive Bates-numbered documents.  Moen now complains that the company's privilege log and amended privilege log are inadequate and identifies numerous specific instances in Section III of its brief (Filing 84 at pages 8-10).  The entries identified by Moen are the subject of Cincinnati Insurance Company's Motion for Protective Order (Filing 90).

In conjunction with Cincinnati's Motion for Protective Order, its claims representative, Shannon Daugherty, advises by affidavit that the company provided workers' compensation insurance for Lund-Ross on the Park Eight project.  On the day of

the accident, she was assigned to conduct a claims investigation and to manage all claims arising from the incident.  Within hours of the incident, she was made aware of the findings of a preliminary investigation into the cause and understood at that time there was a substantial probability of litigation due to the serious injuries suffered by Stephen Turner and the "obvious fault" of Moen Steel.  The company's local attorney, John Iliff was contacted within days of the incident and provided periodic counseling on the anticipated claims.  Dougherty states that her investigation and management of the matter, including the communications and documents gathered, was in anticipation of litigation over the workers' compensation claim likely to be pursued by Stephen Turner against Lund-Ross, and a subrogation claim likely to be pursued against Moen.  Dougherty attests that the documents sought by Moen in Section III of its Brief (Filing 84) were all prepared in anticipation of litigation  "or for trial by or for Cincinnati or by or for a representative of Cincinnati" to aid in future litigation.  Dougherty's affidavit then discusses the content of the various documents.

In *Falkner v. General Motors Corp.*, 200 F.R.D. 620 (S.D. Iowa 2001), Magistrate Judge Bremer acknowledged the complexities of defining the work-product privilege as it pertains to insurance claims files:

> Although not determinative, factors such as who prepared the documents, the nature of the documents, and the time the documents were prepared are relevant in the analysis. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542, 542 n.42 (N.D. W. Va. 2000) (stating no bright-line test determines when investigation is conducted in ordinary course of business and when it becomes in anticipation of litigation).  Additionally,
>
> > [C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies.  Thus, even though litigation is

-28-

pending or may eventually ensue does not cloak such routinely generated documents with work product protection.

*Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000). Moreover, if the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim. *See Holton v. S & W Marine, Inc.*, No.CIV.A.00-1427, 2000 WL 1693667, at *3 (E.D. La. Nov. 9, 2000) (stating "Insurance companies regularly take statements from witnesses during the routine adjustment of a potential insurance claim"; holding defendants' assertions–that prudent parties anticipate litigation and act with that possibility in mind–did not protect statements from discovery absent showing that investigations were conducted primarily for purposes of future litigation and outside ordinary course of investigating potential insurance claim).

While ordinary work product is often that of an attorney, "the concept of work product is not confined to information or materials gathered or assembled by a lawyer." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977). The court also notes, however, that an insurance adjustor attempting to ascertain the facts surrounding an accident, is not in the same position as an attorney considering legal theories. *See Holton*, 2000 WL 1693667, at *2.

200 F.R.D. at 623-24.

In this instance, it does not appear that Cincinnati is attempting to shield its entire claims investigation behind the work product privilege. This particular incident presented a claim of enormous magnitude and immediately posed much more than a "remote prospect of future litigation." *See St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. at 631 (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d at 604). Considering the information in the Dougherty affidavit, and the authorities cited in the company's supporting brief [91], I am persuaded that the documents were prepared in anticipation of litigation. Moen has not shown it has substantial need of these particular materials in the preparation of its case and that it is unable without undue hardship to

-29-

obtain the substantial equivalent of the materials by other means.   *See* Fed. R. Civ. P. 26(b)(3).  The Motion for Protective Order will be granted.

- **Filing 93,** *Plaintiffs' Motion for Sanctions*

In the most recent development of this discovery saga, the plaintiffs seek an award of sanctions against Moen and its attorney for bad faith conduct and for unreasonably and vexatiously multiplying these proceedings.  *See* 28 U.S.C. § 1927:  "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As of September 22, 2006, the date this motion was filed, the case had been pending for only 213 days.  The case is likely to continue for some time.  The court has not yet been able to set a final case progression schedule due to the parties' numerous discovery disputes.

Having reviewed the documents submitted in conjunction with these motions, I am very much persuaded that if any party to this case can be accused of obstructing discovery, that party is Moen.  Despite Mr. Olson's repeated assertions that it is important for the parties in a lawsuit to cooperate in discovery, there is little indication in the record that Moen itself embraces that philosophy.  For example, Moen's blanket assertions of privilege and unverified responses to interrogatories are most unimpressive; however the court does not wish to speculate as to the reasons underlying Moen's conduct during discovery.

The court wishes to impose a moratorium on the escalating incivility and gamesmanship that is occurring in this case. With that goal in mind, I do not believe it would be constructive to impose sanctions on Moen or Mr. Olson at this time and, in my discretion, I decline to do so.

### ORDER

As discussed herein,

**IT IS ORDERED:**

1. Plaintiffs' Motion to Compel Discovery [43] is granted. Moen is given until and including **October 25, 2006** to fully answer plaintiffs' interrogatories and requests for production of documents. Responsive documents may be redacted as necessary to preserve any attorney work-product.

2. Moen's Motion for Protective Order [61] is denied.

3. Moen's Motion to Compel Discovery [83] is denied, except that if the plaintiffs have actual knowledge of the names, addresses, and/or telephone numbers of the persons who provided the information reflected in the OSHA reports provided to Moen, they should supplement their response to Moen's Interrogatory No. 28 on or before **October 25, 2006**, correlating each individual with the information provided, if such can be done without revealing attorney work-product.

4. Cincinnati's Motion for Protective Order [90] is granted.

5. Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 [93] is denied without prejudice to reassertion, if necessary.

6. If counsel cannot reach a reasonable agreement as to the production of documents listed on their respective privilege logs, and further intervention by the court is required, the matter will be immediately referred to a special master, and the costs of retaining the special master will be assessed against the parties in proportion to their success (or lack thereof) on the merits of their claims of privilege or work-product protection.

7. The parties' requests for oral argument [47] & [77] are denied.

**DATED October 5, 2006.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**